UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JUAN A. GONZALEZ JUANES, et al.,		No.  8:10-CV-459 (ATB)

        Plaintiffs,

    v.

MAREK LYZWINSKI, et al.,

        Defendants.
_____

THOMAS W. PLIMPTON, ESQ., for Plaintiffs
MICHAEL R. WOLFORD, ESQ., for Defendants

ANDREW T. BAXTER, U.S. Magistrate Judge

## **MEMORANDUM-DECISION AND ORDER**

      The instant diversity action arises from a failed commercial transaction involving the intended purchase and sale of a helicopter.  Plaintiffs, representing the would-be purchaser(s), have sued the defendants for the return of a $300,000 deposit, asserting claims of conversion, unjust enrichment, breach of contract, and breach of an implied covenant of good faith and fair dealing.  (Am. Compl., Dkt. No. 21).  The defendants/ seller(s), in turn, have filed a counterclaim, alleging that the plaintiffs breached the terms of agreements between the parties and failed to negotiate in good faith towards the consummation of the intended transaction.  (Answer to Am. Compl. with Countercl. ¶¶ 47-54, Dkt. No. 22).

      Presently before this court is the plaintiffs' partial motion for summary

judgment on their breach of contract claim, based on a Letter of Intent ("LOI") between plaintiff Gonzalez and defendant Southern Winds Aviation, LLC ("SWA").[1] (Dkt. Nos. 29-32). Plaintiffs argue that, under the unambiguous terms of the LOI, they are entitled to summary judgment for the return of a $300,000 deposit plus interest, both against SWA, and, by "piercing the corporate veil," against its sole owner, defendant Lyzwinksi. Defendants have opposed plaintiffs' motion (Dkt. No. 41), asserting, *inter alia*, that plaintiffs forfeited their right to the return of the deposit by failing to negotiate in good faith about the terms of the transaction that were left open by the LOI. Plaintiffs filed a reply (Dkt. No. 42), and on April 4, 2012, the court conducted oral argument on the motion.

For the reasons set forth below, this court denies plaintiffs' motion for partial summary judgment. The court concludes that, given that all parties have acknowledged that the LOI imposed a mutual duty to negotiate in good faith towards the completion of the intended purchase and sale of the helicopter, there are material issues of fact as to whether plaintiffs breached this duty and forfeited, in whole or part, any right to the return of the deposit. Given that conclusion, the court need not address several other issues raised by the parties, including the question of whether the corporate veil should be pierced so that defendant Lyzwinksi would be liable on any judgment that might ultimately be obtained against SWA.

---

[1] The motion was originally made returnable before Hon. Glenn T. Suddaby, the U.S. District Judge originally assigned to this case. Thereafter, with the consent of all parties, Judge Suddaby referred the case to me to conduct all proceedings and order the entry of judgment, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

**I.	Summary of Relevant Facts**

Plaintiff Executive Express Aviation S.A. de C.V. ("EEA") is a Mexican corporation that rents or charters airplanes and helicopters, and plaintiff Juan A. Gonzalez Juanes ("Gonzalez") is a board member of EEA, authorized to conduct business on behalf of that corporation. (Pls.' Stmt. of Mat. Facts ¶¶ 8-9, Dkt. No. 29-1).[2] Defendant Southern Winds Aviation, LLC ("SWA") is engaged in the sale and lease of aircraft, primarily helicopters, and defendant Marek Lyzwinski is the president, owner, and sole employee of SWA. (Pls.' Stmt. of Mat. Facts ¶¶ 10-11).[3]

In January 2008, plaintiff Gonzalez and defendant Lyzwinski, on behalf of SWA, entered into a "Letter of Intent" ("LOI") relating to the intended purchase, by plaintiffs, of a 2008 model Agusta Koala helicopter from defendants. (Pls.' Stmt. of Mat. Facts ¶ 21; LOI, Dkt. No. 41-4). Although the parties to the LOI did not fully and/or timely comply with certain of its provisions,[4] counsel for both sides agreed, at oral argument, that the LOI was a binding preliminary agreement between the parties. (LOI ¶ 13). The LOI was "subject to," *inter alia*, the finalization and execution of an Aircraft Purchase Agreement between the parties on or before March 31, 2008, and

---

[2] The court will rely on the plaintiffs' Statement of Material Facts to the extent it is not disputed by the defendants' Response (Dkt. No. 41-1).

[3] Because the court need not address the issue of whether the "corporate veil" of SWA should be pierced, it will not discuss the conflicting evidence regarding defendant Lyzwinski's manner of operating SWA.

[4] For example, the seller later agreed to a $200,000 discount from the $3,900,000 purchase price recited in the LOI, and the purchaser's $300,000 deposit was paid to defendants well after the deadline in the LOI.

the LOI was to be "superseded and replaced by" the Purchase Agreement. (LOI ¶¶ 13, 17b). Although the LOI set forth many terms of the agreement between the parties regarding the intended purchase and sale of the helicopter, counsel agreed, at oral argument, that the LOI anticipated further negotiation regarding several key provisions of the Purchase Agreement, including the purchase price (Defts.' Mem. of Law at 8, Dkt. No. 41-3) and the particulars of how and when the balance of the purchase price would be deposited in escrow before the delivery of the helicopter (LOI ¶ 4.3).

As noted, the LOI required the purchaser to wire transfer a $300,000 deposit to a listed bank account. (LOI ¶¶ 4.1, 5). The LOI stated:

> In case the contract is not concluded, all advanced payments will be returned to the Purchaser by a wire transfer. If Purchaser fails to provide the remaining payment by the date specified in the Purchase Agreement and the Seller fully complied with the LOI and Purchase Agreement, the initial escrow deposit becomes nonrefundable.

(LOI ¶ 15). The purchaser's $300,000 deposit was wire transferred on or about March 14, 2008, well after the deadline in the LOI; however, as defense counsel acknowledged at oral argument, the defendants accepted and excused the lateness of this payment. (Gonzalez Dep. at 47, Dkt. No. 31-1; Pls.' Stmt. of Mat. Facts ¶ 25).

The LOI included an attachment which listed the specifications of the helicopter to be delivered to the purchaser. (LOI at pp. 6-8). Plaintiff Gonzalez, based on his perception of the presentation of the subject helicopter by the salesmen associated with defendant Lyzwinski, contended that the helicopter should be delivered with air conditioning, a headliner, and a finish coat of paint, at the base price. (Gonzalez Dep.

4

at 28, 60-64). Defendant Lyzwinski was willing to provide these features; but, because these items were not included in the specifications listed in the LOI, he demanded that the purchaser should pay an additional $120,000 to cover the costs of the modifications. (Defts.' Mem. of Law at 3; 7/16/08 Lyzwinski e-mail, Dkt. No. 41-5; 7/30/08 Lyzwinski e-mail, Dkt. No. 41-7; Lyzwinski 1/27/10 Dep. at 55-65, Dkt. No. 30-1).[5]

Defendants point to an e-mail chain between plaintiff Gonzalez and his lawyer, in late July 2008, as evidence that the plaintiffs' proposed modifications to the preliminary agreement between the parties were intended to create a pretext for abandoning the helicopter purchase. (Dkt. No. 41-6). Plaintiff Gonzalez advised his lawyer that he and his partner decided not to terminate the LOI with defendants because "it would probably be too costly," (*Id.*), which defendants interpret as an admission that Gonzalez knew the $300,000 was, at that point, nonrefundable, (Lyzwinski Aff. ¶ 29, Dkt. No. 41-2). Gonzalez continued "We should give it a try to modify the terms of the contract and perhaps the conditions in which the helicopter

---

[5] Plaintiff Gonzalez and defendant Lyzwinski started a similar transaction, resulting in the completed purchase/sale of another helicopter, shortly before the failed transaction that is the subject of this action. When the first helicopter was delivered in June 2008 (which was after the date that the parties entered into LOI with respect to the second transaction), Gonzalez complained that the helicopter lacked several finishing features–air conditioning, exterior paint, and interior seat cushions. The purchasers ultimately had to have these features added by a separate company, at the cost of $195,000. (Gonzalez Reply Aff. ¶¶ 7-10, Dkt. No. 42-2, & Ex. B, Dkt. No. 42-4). Gonzalez asserts that he requested adding certain additional features to the second helicopter, because he was disappointed with the first helicopter, as delivered. (Gonzalez Reply Aff. ¶ 12). The first helicopter purchase was a cash transaction, so the timing of the escrow of the purchase price, discussed below, would not have been an issue. (Gonzalez Reply Aff. ¶ 8).

will be delivered." (7/27/08 Gonzalez e-mail). In an e-mail to his lawyer the next day, Gonzalez states: "If he [defendant Lyzwinski] does not accept the contract then we might decide to cancel the LOI." (7/28/08 Gonzalez e-mail). Plaintiff Gonzalez asserts that his concern about the "costs" of cancelling the LOI with defendants related to the risk that his company could lose one or more customers if they were not able to make a helicopter available to those customers, not a belief that the $300,000 deposit was nonrefundable. (Gonzalez Reply Aff. ¶ 25).

On August 12, 2008, an attorney for plaintiffs forwarded, to Lyzwinski, a proposed Purchase Agreement signed by Gonzalez. (Dkt. No. 41-9). The attorney's e-mail stated that the $300,000 deposit previously paid by Gonzalez was "applicable to this contract and [is] to be used as indicated in the attached contract." (Dkt. No. 41-9 at 1). The draft agreement stated "The Deposit is nonrefundable and shall be retained by Seller under all circumstances other than an inability or failure of Seller to deliver the Aircraft" according to the attached specifications. (Gonzalez Draft Purchase Agreement ¶ 3, at p. 3). The Purchase Agreement signed by Gonzalez proposed a total purchase price of $3,700,000 for the helicopter, to include the air conditioning, headliner, and finish painting. (*Id.* ¶ 2 & Attach. 1). The Gonzalez draft also provided that the $3,400,000 balance on the purchase price would be placed with an escrow agent "at or before Closing in immediately available funds." (*Id.* ¶ 2).

Lyzwinski promptly rejected the plaintiffs' proposal and did not sign plaintiffs' version of the Purchase Agreement. (Lyzwinski 8/14/08 e-mail, Dkt. No. 41-10 at 1; Pls.' Stmt. of Mat. Facts ¶ 28). In an e-mail dated August 29, 2008, plaintiffs'

6

attorney advised Lyzwinski that, after discussing defendants' position with Gonzalez, he "does not want to proceed with the purchase." (Dkt. No. 41-12). Plaintiffs' counsel explained that the purchase of the helicopter was being financed, and that the lender would not advance funds for the balance of the purchase price five days before delivery, as the defendants demanded. (*Id*.). Plaintiffs' attorney also advised Lyzwinski that the financing entity would not move forward without a purchase agreement signed by both parties. (*Id*.).[6]

By e-mail dated September 18, 2008 (Dkt. No. 41-14), Lyzwinski forwarded an unexecuted "final" version of the Purchase Agreement to plaintiffs' counsel. Defendants' draft specified a purchase price of $3,820,000, including the additional cost of the air conditioning, headliner, and finish painting, which were not included in the LOI's specifications. (Lyzwinski 1/27/10 Dep. at 67-70).[7] Lyzwinski continued to insist that plaintiffs place the balance of the purchase price in escrow five days before the scheduled delivery of the helicopter, based on his "previous experience with

---

[6] Defendants argue that plaintiff Gonzalez never asked any lender whether they would place the funds in escrow five days before delivery, and never actually applied for financing. (Defts.' Mem. of Law at 4-5). Gonzalez testified that he may not have submitted a written application for financing, but he did have discussions about financing the helicopter with at least one lender, which required a signed copy of the purchase agreement before considering the transaction. (Gonzalez Dep. at 36-38, 40, 49-51). Plaintiff also testified that, although he may not have specifically addressed the timing of the escrow with a potential lender for this transaction, he knew, based on his extensive experience with financing aircrafts, that no lender would advance the funds for a purchase many days before the closing. (Gonzalez Dep. at 64-70).

[7] The price quoted by Lyzwinski also reflected his agreement to provide the purchaser with a $200,000 discount from the $3,900,000 base price specified in the LOI. (*Id*.)

7

delayed payment." (9/18/08 Lyzwinski e-mail, Dkt. No. 41-14).[8]

The parties never resolved the issues of whether the plaintiffs should pay extra for the air conditioning, headliner, and finish painting or the timing of the deposit of the balance of the purchase price with an escrow agent.[9] On October 2, 2008, defendant Lyzwinski sent a "default notice" to plaintiff Gonzalez, stating that because of plaintiffs' "non-performance and non-responsiveness," the $300,000 "has been forfeited to cover additional expenses to re-market the aircraft and other expenses." (Dkt. No. 41-15). On September 24 and November 18, 2008, plaintiffs' attorney demanded that defendant Lyzwinski return plaintiffs' $300,000 deposit. (Gonzalez Reply Aff. ¶ 15 & Ex. F., Dkt. No. 42-8; Am. Compl. ¶ 31). Plaintiffs commenced this diversity action in April 2010. (Compl., Dkt. No. 1).

## II. Applicable Law

### A. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to

---

[8] The LOI specified that the balance of the purchase price should be deposited into an escrow account "at least five business days before the scheduled delivery of the Aircraft, **unless specified different [sic] in the Purchase Agreement**." (LOI ¶ 4.3) (emphasis added).

[9] There was also an unresolved issue regarding plaintiffs' obligation under the LOI to pay another, $100,000 escrow payment to a title company. (LOI ¶ 4.2). Plaintiffs asserts that they attempted to make this payment in February 2008, but that it was rejected by the escrow agent, as plaintiffs advised defendants' representative by telephone. (Gonzalez Dep. at 71-73; Gonzalez Reply Aff. ¶ 23 & Ex. I, Dkt. No. 42-11). Defendants allege that plaintiffs failed to advise them of the unsuccessful attempt to make the escrow payment in writing, as required by the LOI. (LOI ¶ 5 at pp. 2-3; Lyzwinski Aff. ¶ 8). Given the courts determination that there are other material issues of fact that preclude granting plaintiffs' motion for partial summary judgment, it is not necessary to determine the materiality of this issue.

judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273.  In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.  "The district court considering a summary judgment motion . . . must . . . be 'mindful of the underlying standards and burdens of proof . . .'"  *U.S. S.E.C. v. Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (citations omitted).  Where, as here, the plaintiffs are moving for summary judgment, they bear a much greater initial burden; they "must

show that the evidence supporting its claims is so compelling that no reasonable jury could return a verdict for the defendant." *Id.* Accord, *McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 273 (E.D.N.Y. 2011).

### B. New York Contract Law

The LOI (¶ 10) has a New York choice of law provision and the parties agree that New York law should control in this diversity action. (Pls.' Mem. of Law at 4-5, Dkt. No. 29-2; Defts.' Mem. of Law at 5-9 (citing New York case law)). *See Brown v. Cara*, 420 F.3d 148, 152 (2d Cir. 2005). It is also undisputed that the LOI was drafted by Lyzwinski's lawyer, so that any ambiguities in that preliminary agreement must be construed against the defendants. *Guardian Life Ins. Co. of Am. v Schaefer*, 70 N.Y.2d 888, 890, 524 N.Y.S.2d 377 (N.Y. 1987); *Jacobson v Sassower*, 66 N.Y.2d 991, 993, 499 N.Y.S.2d 381 (N.Y. 1985).

The New York Court of appeals has articulated the standards for interpreting a contract that contemplates further negotiations and agreements by the parties:

> [A] contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms. . . . Further, [a] condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.

*IDT Corp. v. Tyco Group*, 13 N.Y.3d 209, 214, 890 N.Y.S.2d 401 (N.Y. 2009) (citations and internal quotations omitted). The Second Circuit has summarized the New York law relating to "preliminary agreements" as follows:

> Ordinarily, where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract. . . .  In some circumstances, however, preliminary agreements can create binding obligations. . . . The extent of the obligations created depend on the preliminary agreement in question, though, in general, binding preliminary agreements fall into one of two categories. . . . "Type I" preliminary agreements [are] complete, reflecting a meeting of the minds on all the issues perceived to require negotiation. . . . . Because it is complete, a Type I preliminary agreement binds both sides to their ultimate contractual objective.  "Type II" preliminary agreements, by contrast, are binding only to a certain degree, reflecting agreement on certain major terms, but leav[ing] other terms open for further negotiation. . . . Type II agreements do[ ] not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate the open issues in good faith in an attempt to reach the . . . objective within the agreed framework.

*Brown v. Cara*, 420 F.3d at 153 (citing, *inter alia*, *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548 (2d Cir.1998) (internal quotations omitted)).[10]

## III.  Analysis

Counsel for both parties agreed, at oral argument, that the LOI was a Type II preliminary agreement that required both sides to negotiate in good faith towards the finalization of a Purchase Agreement.  (Defts.' Mem. of Law at 7-9; Pls.' Reply Mem.

---

[10] Although there are many New York state court decisions applying this analytical framework for preliminary agreements, which was first articulated by Judge Leval in *Teachers Ins. & Annuity Ass'n. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987), the New York Court of Appeals, more recently, made the following comment: "While we do not disagree with the reasoning in federal cases [citing *Brown v. Cara* and *Teachers Insurance*], we do not find the rigid classifications into 'Types' useful."  The Court of Appeals stated that, at least in that particular case, "it is enough to ask . . . whether the agreement contemplated the negotiation of later agreements and if the consummation of those agreements was a precondition to a party's performance."  *IDT Corp. v. Tyco Group*, 13 N.Y.3d at 213 n. 2.  *IDT Corp*. recognized the obligation of the parties to the preliminary settlement agreement in that case to negotiate in good faith towards the completion of the other agreements contemplated in the preliminary agreement.  *Id*. at 214.

11

of Law at 10, Dkt. No. 42-12).[11] The obligation to negotiate in good faith "bar[s] a party from renouncing the deal, abandoning the negotiations, or insisting on conditions that do not conform to the preliminary agreement." *Teachers Ins.*, 670 F. Supp. at 498. However, merely proposing terms in the ultimate agreement which are allegedly inconsistent with settlement does not constitute a breach of the preliminary agreement. *IDT Corp. v. Tyco Group*, 13 N.Y.3d at 214.

Defendants' best argument to establish a disputed issue of material fact relating to plaintiffs' breach-of-contract claim is the contention that the plaintiffs violated their duty to negotiate in good faith towards the finalization of a Purchase Agreement. (Defts.' Mem. of Law at 7-9).[12] Plaintiffs have argued that they were entitled to a

---

[11] Whether the LOI was even a binding Type II agreement is arguably subject to greater debate. *See, e.g., Shann v. Dunk*, 84 F.3d 73, 82 n.6 (2d Cir. 1996) ("Although . . . [a] Type II [agreement] *can* apply where the parties have not agreed on a term of significance, that would be so only where the parties clearly manifested a mutual intent to be so bound."); *Henchman's Leasing Corp. v. Condren*, 87 CIV. 6478, 1989 WL 11440, at *8 (S.D.N.Y. Feb. 8, 1989) (plaintiff failed to prove, at a bench trial, that the parties' "agreement in principle" bound them to negotiate, in good faith, towards the execution of an aircraft lease agreement). However, for the purpose of resolving this motion, the court will accept the stated position of both parties that they were bound to negotiate in good faith towards the finalization of a Purchase Agreement.

[12] Defendants' primary argument is that they should be permitted to enforce, against plaintiffs, the provision in the draft Purchase Agreement, signed by Gonzalez, but not by Lyzwinski, which stated, *inter alia*, that the $300,000 deposit was nonrefundable. (Defts.' Mem. of Law at 4-7). Defendants relied on the statute of frauds in N.Y.U.C.C. ¶ 2-201, which provides that a written agreement for the sale of goods (for $500 or more) may be enforced against a party who signed the agreement, even in the absence of execution by the enforcing party. In deciding the pending partial motion for summary judgment, it is not necessary for the court to resolve the merits of defendants' primary argument. However, the flaw in defendants' position is that they must prove an actual meeting of the minds of the parties to the alleged Purchase Agreement before they may seek enforcement of the only-partially-executed document under the statute of fraud. As discussed above, Lyzwinski clearly rejected several critical terms of the Purchase Agreement proposed by Gonzalez, which indicates that there was no mutual assent necessary to form a binding agreement as to any of its terms. *See, e.g., Bazak Intern. Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 389 (S.D.N.Y. 2005) ("Even while asserting a contract

return of the $300,000 deposit based on the unambiguous language of the LOI (¶ 15), that it should be returned to the purchaser "[i]n case the contract is not concluded." (Pls.' Mem. of Law at 5-7). However, at oral argument, plaintiffs' counsel conceded that, if Gonzalez breached the duty, under the LOI, to negotiate the Purchase Agreement in good faith, that might put the $300,000 deposit in jeopardy.

Defendants argue, based in part on Gonzalez's July 2008 e-mails to his lawyer (Dkt. No. 41-6), that plaintiffs demanded modifications of the LOI (and the Purchase Agreement concluded in connection with the earlier, completed sale of another helicopter), in order to provide a pretext for not completing the purchase of the second helicopter. Although Gonzalez has offered an innocent explanation for that e-mail chain, those communications create a factual issue regarding his good faith in the negotiation of the Purchase Agreement.

Defendants also contend that Gonzalez refused to escrow the balance of the purchase price five days before delivery of the helicopter, although he apparently agreed to the advance escrow payment in connection with the first helicopter sale. Lyzwinski argues that the explanation given by plaintiffs' counsel, that the lender

---

under UCC Section 2-201(2), parties must still demonstrate the element of mutual assent") (citation omitted); *AFP Imaging Corp. v. Philips Medizin Systeme Unternehmensbereich*, 92 CIV. 6211, 1994 WL 652510, at *4-5 (S.D.N.Y. Nov. 17, 1994) ("The peculiar rules of the Statute of Frauds merely require that to be put in writing which may be left to parol in other cases. The fundamental question . . . is whether there was any contract; any actual meeting of minds on all the material elements of the agreement. If a material element of a contemplated contract is left for future negotiations, there is no contract enforcible under the Statute of Frauds or otherwise.") (citing, *inter alia, Kleinschmidt Div. of SCM Corp. v. Futuronics Corp.*, 41 N.Y.2d 972, 973, 395 N.Y.S. 2d 151 (N.Y. 1977) (no contract under the Uniform Commercial Code where dispute over material terms manifested a lack of contractual intent)).

financing the second purchase was unwilling to escrow the funds in advance, was disingenuous because Gonzalez later acknowledged that he may not have ever raised this issue with any lender. Gonzalez explained that his position on the advance escrow provision changed because the second helicopter purchase, unlike the first transaction, was financed; and that, in his experience with prior financed transactions, no lender would escrow the purchase funds many days before closing. While the LOI (¶ 4.3) contemplated negotiation on the escrow provisions in the Purchase Agreement, defendants raise an issue of fact as to whether Gonzalez negotiated in good faith regarding this provision.

Defendants also argue that plaintiffs failed to negotiate in good faith because they insisted on additional features to the helicopter that were not within the specifications in the LOI; plaintiffs refused to pay any additional amount for the air conditioning, headliner, and finish painting, even though Gonzalez knew, as a result of the first helicopter transaction, that these features would cost in excess of $100,000. Plaintiff Gonzalez argues that he insisted on getting these additional features for no additional charge because defendants' sales agents represented that the helicopter offered for sale would include such finishing features. Although Lyzwinski agreed to negotiate about adding additional features to the helicopter, he raises issues of fact as to whether Gonzalez negotiated in bad faith when he allegedly insisted on free "extras" not listed in the specifications of the LOI.

Plaintiffs have demanded summary judgment in the amount of their $300,000 deposit, plus interest. Defendants' counterclaim (Dkt. No. 22 at 6), asserting that

plaintiffs negotiated in bad faith, seeks lost profits from the helicopter sale, as well as other damages. If defendants were to succeed on their counterclaim, they would probably not be entitled to recover lost profits, but might be entitled to reimbursement, perhaps out of plaintiffs' deposit, of any costs incurred in connection with the failed transaction. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 431 (2d Cir. 2011) (Although lost profits are not available for breach of contract for failure to negotiate in good faith, "out-of-pocket costs incurred in the course of good faith partial performance are appropriate") (citations omitted). Hence, there are also issues of material facts with respect to the appropriate damages in this case.

## IV. Conclusion

For the reasons stated above, the court concludes that the existence of genuine issues of material fact with respect to plaintiffs' breach of contract claim precludes summary judgment. Based on that conclusion, the court need not address other issues raised by the parties in connection with the partial summary judgment motion, including plaintiffs' argument that the corporate veil of defendant SWA should be pierced to make Lyzwinski personally liable for any damages against SWA.[13]

---

[13] Piercing the corporate veil requires a showing that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. N.Y. State Dep't of Taxation & Finance*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807 (N.Y. 1993). The question of "[w]hether the corporate veil should be pierced requires a fact specific inquiry . . . ." *Bravado Intern. Group Merchandising Services, Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 194 (E.D.N.Y. 2009). A "fact-laden claim to pierce the corporate veil is particularly unsuited for resolution on summary judgment." *Forum Ins. Co. v Texarkoma Transp. Co.*, 229 A.D.2d 341, 342, 645 N.Y.S.2d 786 (1st Dep't 1996). *Accord*, *Donald Dean & Sons, Inc. v. Xonitek Systems Corp.*, 656 F. Supp. 2d 314, 321-22 (N.D.N.Y. 2009).

**WHEREFORE**, it is **ORDERED** that plaintiffs' partial motion for summary judgment (Dkt. No. 29) is **DENIED**.

Dated: June 22, 2012

*[Signature]*

Hon. Andrew T. Baxter
U.S. Magistrate Judge